**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CRIMINAL ACTION** |
| | : | |
| **v.** | : | **NO. 02-172-26** |
| | : | |
| **CHRISTOPHER SMITH** | : | |
| | : | |

**MEMORANDUM**

**TUCKER, J.** **August 3, 2022**

Presently before the Court is: (1) Christopher Smith's *pro se* Sealed Amended 28 U.S.C. § 2255 Motion (ECF No. 2610); (2) the Government's Sealed Response (ECF No. 2700); (3) Smith's counseled Supplemental § 2255 Motion (ECF No. 2847); (4) the Government's Response to the Supplement Motion (ECF No. 2874); and (5) Smith's Reply Brief (ECF No. 2890). Upon careful consideration of the Parties' submission, and for the reasons outlined below, Smith's Motions are **DENIED and DISMISSED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

### a. Smith's Conviction, Sentencing, and Initial § 2255 Motion

Defendant Christopher Smith ("Defendant" or "Smith") was a part of the Courtney Carter Organization ("Carter Organization") which consisted of many members who distributed controlled substances, including cocaine and crack, throughout Pennsylvania, Delaware, and other locations. *United States v. Smith*, 437 Fed. App.' x 110, 111 (3d Cir. 2011). From 1997 to 2002, the Carter Organization distributed more than 600 kilograms of cocaine and more than 400 kilograms of crack, which resulted in gross revenues in excess of $24 million. *Id*.

[1] This section draws primarily from *United States v. Smith*, 437 Fed. App.' x 110 (3d Cir. 2011), Smith's Supplemental Motion (ECF No. 2847), and the Government's Response (ECF No. 2700).

Throughout the organization, Smith was known as the "gun" and acted as an enforcer; he protected the areas they sold drugs from rival drug organizations. *Smith*, 437 Fed. App.' x at 111. He, along with other co-conspirators, engaged in several violent acts of turf war activity from 1999-2000 with "Zip World" and "Zipnicks." *Id*. On multiple occasions, the gangs exchanged gunfire which ultimately led to Smith and a co-conspirator shooting and killing Grayling Craig, a rival gang member. *Id*.

In 2002, a grand jury in the Eastern District of Pennsylvania indicted Smith and thirty-five defendants with conspiracy to distribute more than five kilograms of cocaine and more than fifty grams of crack. *Smith*, 437 Fed. App.' x at 111. Two years later, on January 30, 2004, a jury convicted Smith of: (1) one count of conspiracy to distribute cocaine and crack, in violation of 21 U.S.C. § 846 and § 841(a)(1); and (2) two counts[2] of use of a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(c).[3] *Id*. at 112.

At sentencing, the Honorable Stewart Dalzell adopted the Presentence Investigation Report ("PSR"), which stated that Defendant's base offense level was a 38 under § 2D1.1(c)(1). *Smith*, 437 Fed. App.' x at 112. Moreover, Judge Dalzell raised the base offense level to 43 in consideration of § 2D1.1(d)(1) and upon belief that Grayling Craig was killed under circumstances that would constitute murder under 18 U.S.C. § 111. *Id*. After more total offense level raises, due to Smith's trial conduct, the sentencing court imposed: (1) a life sentence on count one, conspiracy to distribute five kilograms of cocaine and more than fifty grams of crack; (2) an additional thirty years imprisonment, a five-year mandatory consecutive sentence on the Count 119; and (3) a 25-year mandatory consecutive sentence on Count 121. *Id*.

---

[2] Counts 119 and 121.

[3] Through special interrogatories, the jury found that Smith was responsible for the distribution of more than five kilograms of cocaine and fifty grams of crack. *Smith*, 437 Fed. App.' x at 112.

Smith appealed his sentence; however, the Third Circuit affirmed the sentences imposed on Counts 119 and 121 but vacated the life sentence on Count 1 and remanded the case for resentencing under the advisory guidelines set forth in *United States v. Booker*, 543 U.S. 220 (2005). *Smith*, 437 Fed. App.' x at 112. On remand, Judge Dalzell acknowledged he had discretion to impose a downward sentence but chose not to, noting that the offenses involved, including the murder and threats to the Government's witnesses at trial, were enough to find that Smith was a "dangerous, remorseless offender." *Id*. Moreover, Smith was "credited" for two intervening murder convictions that resulted in a criminal history category of VI. Thus, Judge Dalzell resentenced Smith to life imprisonment on Count One.

In Defendant's Amended § 2255 Motion, he alleges: (1) counsel was ineffective because they failed to present any mitigating information at his 2004 and 2008 sentencing hearings; (2) counsel failed to request a more robust multiple conspiracy jury charge; (3) counsel failed to properly investigate his alleged participation in a retaliatory shooting at the 38th Street and Market intersection and abandoned any defense of it at trial; (4) counsel improperly cross-examined his co-conspirators regarding the 38th and Market shooting; (5) the Government violated *Brady v. Maryland*, 373 U.S. 83 (1963), when it failed to turn over its investigative file and various statements from witnesses and a co-defendant; (6) counsel failed to object to government agents engaging in allegedly "intimidating behavior" toward spectators, the trial court's "over-broad security measures," and a portion of *voir dire* occurring outside the presence of the public; (7) counsel failed to discover jury bias; (8) counsel failed to remove a juror who the Government observed sleeping during some portions of the trial; and (9) a "catch all" section that makes numerous other claims[4].

[4] This "catch all" section alleges: (1) the Government and trial court improperly "vouched" for two special agents; (2) counsel was ineffective for failing to object to this "vouching" during trial and on appeal; (3) counsel failed to

**b. Jeffrey Walker's Indictment and Cooperation**

As Smith was in the process of filing his Amended Motion, the Philadelphia Police Department ("PPD") was undergoing a thorough investigation that uncovered police corruption that touched on Defendant's case.

On February 24, 2014, PPD Officer Jeffrey Walker plead guilty to attempted robbery under 18 U.S.C. § 1951(a) and a § 924(c) firearms count. *See* ECF No. 2847 at 1. As a part of his plea agreement, Walker agreed to cooperate in the United States Attorney's Office's investigation of "any other crimes about which he has knowledge." *Id*. To fulfill his agreement, Walker met with the Government approximately 30 to 40 times in which he went through PPD Narcotics Field Unit ("NFU") reports and revealed: (1) where officers stole money; (2) physically abused individuals or defendants; or (3) made false reports, arrests, and illegal searches.

Because of Walker's participation and grand jury testimony, the United States Attorney's Office indicted NFU Officers[5] on various counts, including Racketeer Influenced and Corrupt Organizations ("RICO"), robbery, extortion, possession with intent to distribute cocaine, and falsification of records in a federal investigation. Specifically, from February 2006 through November 7, 2012, these officers engaged in "thefts of goods, including clothing, jewelry, and electronics, theft and sale of drugs, physical violence and threats, and lying in official police reports." *See* ECF No. 2847 at 3.

"diligently pursue" Jencks Act material; (4) the court's failure to grant a mistrial or a motion to strike with a curative instruction after Jamal Morris testified that all defendants tried to cooperate with the Government; and (5) counsel was ineffective for declining to join the objection to this testimony or challenge it on appeal.

[5] The NFU Officers were Thomas Liciardello, Brain Reynolds, Michael Spicer, Perry Betts, Linwood Norman, and John Speiser.

Moreover, in September 2016, Walker provided five days of deposition testimony in connection with pending civil actions relating to his and other officers' misconduct in the NFU. During these depositions, Walker named additional NFU officers, sergeants, and lieutenants who engaged in or were complicit in similar acts and efforts to conceal the misconduct from public scrutiny. *See* ECF No. 2847 at 3-4. Furthermore, he shared information with the United States Attorney's Office during his 30 proffer sessions.

Based on this information, the Government believed NFU Officers Jeffrey Walker, Thomas Liciardello, and Brian Reynolds engaged in gunpoint robberies, extortion, kidnappings, thefts, planting evidence, warrantless searches, as well as fabrication of probable cause. These same officers, however, along with other NFU Officers, were called to testify in Defendant's prosecution.

**c. Smith's Supplemental § 2255 Motion**

On September 15, 2017, Smith filed a counseled supplemental motion to vacate under § 2255, in which he alleges: (1) the Government violated its *Brady* obligations when it failed to disclose the PPD's misconduct prior to Smith's trial[6]; (2) trial and resentencing counsel were ineffective; and (3) Smith's due process rights were violated because NFU and PPD Officers were corrupt, and the prosecution committed misconduct.

The Government counters that Defendant's claims in his *pro se* Amended 2255 Motion are meritless. As for Smith's counseled brief, the Government argues: (1) his claims are untimely as they are barred by § 2255's one-year statute of limitations; (2) *Brady* is inapplicable in post-conviction proceedings; (3) Smith failed to state a valid *Brady* claim for alleged nondisclosures,

[6] Smith argues that the Government violated its *Brady* obligations when it failed to disclose: (1) officer misconduct it learned through its subsequent investigation of PPD officers and its 30+ proffer sessions with Officer Walker; and (2) misconduct of the PPD prior to Smith's trial. ECF No. 2847 at 7, 13.

before his conviction became final; (4) counsel was not ineffective; and (5) Smith's due process claim is meritless because it is based on supposition.

## II. STANDARD OF REVIEW

A federal prisoner in custody under sentence of a court may move the court to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. *Davis v. United States*, 417 U.S. 333, 343 (1974); *Okereke v. United States*, 307 F. 3d 117, 120-21 (3d Cir. 2002). Section 2255 provides four avenues through which relief may be claimed: (1) the sentence imposed violated the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. *Hill v. United States,* 368 U.S. 424, 426-27, (1962) (quoting 28 U.S.C. § 2255 (a)).

A § 2255 motion "is reviewed much less favorable than a direct appeal of the sentence." *United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (citations omitted). Rather, relief under § 2255 is only available when "the claimed error of law was a 'fundamental defect which inherently results in a complete miscarriage of justice,' and … 'present[s] exceptional circumstances where the need for the remedy afforded by the writ…is apparent.'" *Davis v.*, 417 U.S. at 346 (1974) (citations omitted).

In rendering a decision on a defendant's § 2255 motion, "a district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Johnson v. United States*, 294 F. App' x 709, 710 (3d Cir. 2008) (quotation omitted). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 427 (3d Cir. 2000).

## III. DISCUSSION

This Court first addresses Smith's *pro se* claims raised in his Amended § 2255 Motion before turning to his counseled Supplemental Motion.

### A. Smith's *Pro Se* Amended § 2255 Motion

#### i. Ineffective Assistance of Counsel Standard

Sixth Amendment ineffective assistance of counsel claims are measured against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, that challenged action might be considered sound trial strategy." *Id*. (quotation omitted).

Second, the petitioner must show that counsel's deficient performance "prejudiced the defendant" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at. 694, but is less than a preponderance of the evidence. *Id*. at 693-94. Moreover, the determining court must consider "whether the [petitioner] was prejudiced

by the 'denial of the entire judicial proceeding…to which he had a right.'" *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)).

**a. Counsel's Alleged Failure to Present Mitigating Evidence**

Smith claims counsel failed to present mitigating evidence at his sentencing hearing that would have resulted in a lesser sentence.

This Court disagrees. Even assuming that counsel was ineffective for failing to present mitigating evidence, Smith would not be able to satisfy the prejudice prong of the *Strickland* test. The Government presented a mountain of evidence proving Smith's guilt. Notably, all this evidence led the sentencing court to note that Smith lacked remorse as he has participated in multiple shootings and had no regard for human life or the criminal justice system. Finally, Smith shot and killed Grayling Craig. Any mitigating evidence would likely have not foreclosed the sentencing court from imposing a life sentence. Thus, this claim is denied.

**b. Counsel's Alleged Failure to Seek Multiple Conspiracy Jury Instructions**

Next, Smith argues that: (1) the drug conspiracy count was improperly charged, as "members of the same drug conspiracy were trying to kill each other" and that these killings cannot satisfy the furtherance element of a conspiracy charge; (2) his use of a firearm was not in furtherance of that conspiracy; and (3) trial counsel was ineffective because he did not argue that the instructions should have been more robust. Both arguments are meritless.

First, there was overwhelming evidence that proved Smith, along with countless others charged in the instant matter, were a part of a drug organization that would repeatedly engage in shootings with members of the rival gang, Zip World. Testimony over the three-week trial established that all the members of Zip World were "mortal enemies" with the Carter Organization. Testimony showed that the two groups clashed numerous times in various

locations. The testimony did not indicate that the individuals involved: (1) coordinated their attendance; or (2) shared product or profits.

Smith's arguments that the members trying to kill each other were of the same conspiracy must also fail because it is essentially an "insufficiency in evidence" argument. An insufficiency claim is inappropriate on habeas review and cannot prevail considering *United States v. Caraballo-Rodriguez*, 726 F.2d 418 (3d Cir. 2013) (en banc.) wherein the Third Circuit held that every inference favors the verdict. Moreover, as stated above, the facts proved that Zip World and the Carter Organization were separate entities.

Finally, Smith's counsel was not ineffective for seeking a multiple conspiracy jury instruction. This argument fails because the evidence in the case proved a single conspiracy and the Court's instruction was adequate.

In *United States v. Boyd*, the Third Circuit held that:

> The gist of a criminal conspiracy, the agreement between co-conspirators, may continue over an extended period of time and involve numerous transactions. Parties may join the conspiracy after its inception, and may withdraw and terminate their relationship with the conspiracy prior to its completion. . . . The fact that conspirators individually or in groups perform different tasks in pursuing the common goal does not, by itself, necessitate a finding of several distinct conspiracies. . . . And even if a small group of co-conspirators are at the heart of an unlawful agreement, others who knowingly participate with the core members and others to achieve a common goal may be members of a single conspiracy. . . . It follows from these basic principles that the government, without committing a variance between a single conspiracy charged in an indictment and its proof at trial, may establish the existence of a continuing core conspiracy which attracts different members at different times and which involves different sub groups committing acts in furtherance of the overall plan.

595 F.2d 120, 123-24 (3d Cir. 1978) (internal citations omitted).

The Third Circuit established a three-step inquiry "[t]o determine whether a series of events constitutes a single conspiracy or separate, unrelated conspiracies." *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir. 1989). It requires (1) determining whether there was a common goal among the conspirators; (2) examining the nature of the scheme and determining whether the agreement sought to bring about a continuous result which could not be sustained without the continued cooperation of the conspirators; and (3) examining the extent to which the participants overlapped in various dealings. *Id.*; *see also United States v. Padilla*, 982 F.2d 110, 115 (3d Cir. 1992) ("we note that the *Kelly* factors are most useful to show the existence of a single conspiracy, but that the absence of one factor does not necessarily defeat an inference of the existence of a single conspiracy.").

Here, all three *Kelly* factors are satisfied. As to the first factor – "whether there was a common goal among the conspirators," 892 F.2d at 259 – is plainly satisfied. The common goal among the conspirators was to sell Carter's cocaine, converted to crack, at as many locations as possible, for a profit, while staying alive when attacked by rivals, and not getting arrested. Regarding the second factor, it too is satisfied. This was a large operation, encompassing a dozen retail locations, all of which were supplied by Patterson or Morris with Carter's cocaine.

Finally, the third factor is also satisfied. In *Kelly*, the Third Circuit observed that this third factor does not require the Government to "prove that each defendant knew all the details, goals, or other participants in order to find a single conspiracy." *Id*. at 260 (internal quotation marks and citation omitted). Indeed, in *Kelly*, the appellate court found sufficient overlap where only one conspirator was involved for the duration of the conspiracy. *Id.* Given the vast number of instances in which cross-over was documented during the trial, the third *Kelly* factor was satisfied here. As one obvious example of the overlap, we note the "barricaded man" incident, in

which Christopher Williams was chased by police while in possession of drug proceeds and a firearm and barricaded himself inside Kareem Sanders' drug house. Thus, this claim is meritless, and counsel was not ineffective.

**ii. Smith's Catch-All Section**

In a catch-all-section, Smith makes multiple other ineffective assistance of counsel claims, asserting that counsel failed to: (1) investigate the two charged shooting incidents; (2) make certain arguments; and (3) cross-examine the Government's witnesses against Smith "effectively." These arguments must fail.

As demonstrated throughout the record and the docket history of this case, there was more than enough evidence of Smith's involvement in the drug conspiracy and his involvement in the two shootings charges as substantive counts. The evidence presented was simply overwhelming. Almost every coconspirator testified to Smith's drug sales and his close connection to the group. Smith, himself, confessed to at least four people[7] that he shot Grayling Craig. Additionally, Kareem Clouden, who was involved in one of the shootings testified for two days about his, Smith's, and Christopher Williams' moves that day, which included describing the shooting.[8] Finally, and as discussed above, everyone in the organization knew that Smith sold drugs and was the "muscle." Even if counsel was ineffective, Defendant would not be able to show that he suffered any prejudice. Thus, his *pro se* Amended § 2255 Motion is **DISMISSED WITH PREJUDICE**.

[7] Jamal Carter, Kareem Sanders, Alan Cain, and Melanie Sesay.
[8] This testimony was then corroborated by ballistic examiners.

**B. Counseled Claims**

Smith's counseled Supplemental Motion to Vacate alleges: (1) the Government violated its *Brady* obligations when it failed to disclose the PPD's misconduct prior to Smith's trial[9]; (2) trial and resentencing counsel were ineffective; and (3) Smith's due process rights were violated because NFU and PPD Officers were corrupt and the prosecution committed misconduct.

The Government argues that: (1) Smith's claims are untimely as they are barred by § 2255's one-year statute of limitations; (2) *Brady* is inapplicable in post-conviction proceedings; (3) Smith failed to state a valid *Brady* claim for alleged nondisclosures, before his conviction became final; (4) Smith's counsel was not ineffective; and (5) Smith's due process claim is meritless because it is based on supposition.

**i. *Brady* Standard**

Under *Brady*, the prosecution's suppression of evidence that is favorable to the accused "violates due process where the evidence is material either to guilt or to punishment." *Brady*, 373 U.S. at 87. To establish a *Brady* violation, the defendant must show that: (1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *Simmons v. Beard*, 590 F.3d 223, 233 (3d Cir. 2009). Under the second prong, "mere possibility" that lost evidence might have included material favorable to the defense, "without more, is insufficient[.]" *United States v. Ramos*, 27 F.3d 65, 71 (3d Cir. 1994).

**ii. § 2255's One-Year Statute of Limitations**

Pursuant to § 2255(f), all motions filed under this statute carry a one-year statute of limitation. This period begins to run when the defendant's conviction becomes final. *See United*

[9] Smith argues that the Government violated its *Brady* obligations when it failed disclose: (1) officer misconduct it learned through its subsequent investigation of PPD officers and its 30+ proffer sessions with Officer Walker; and (2) misconduct of the PPD prior to Smith's trial. ECF No. 2847, p. 7, 13.

*States v. Bass*, 268 F. App' x 196, 199 (3d Cir. 2008). Additionally, the limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A).

"A litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Bass*, 268 F. App' x at 199 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418, (2005)). The Third Circuit cautions that "[e]quitable tolling is a remedy which should be invoked 'only sparingly.'" *See id.* (citing *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).

The claims raised in Smith's supplemental motion are time-barred. Smith's conviction became final on February 21, 2012 when the Supreme Court denied his *certiorari* petition. *See Smith v. United Sates*, 565 U.S. 1222 (2012). On February 20, 2013, at the expiration of the one-year period, Smith filed his 2255 motion. After numerous discovery motions, the Honorable Stewart Dalzell ordered Smith to file a comprehensive motion no later than January 8, 2014. After multiple continuances, Defendant filed his amended comprehensive motion on October 14, 2014. Now, and through counsel, Smith filed a supplemental motion on September 15, 2017, almost three years later. [10]

The facts and "newly" discovered information on which his new claims rely were widely publicized and common knowledge at the time he filed his first motion, due to extensive media coverage. The NFU officers were indicted on July 29, 2014, but information regarding the officers was public knowledge before then. *See* ECF No. 2874 at 4-5. The federal authorities arrested NFU officer Walker on May 21, 2013, for attempting to rob a drug dealer. On February

[10] Smith filed this supplemental motion two years and eleven months after his amended motion, to be exact.

25, 2014, Walker pled guilty to robbery and weapons offenses. Thus, Smith would have been aware of these instances within a few months of filing his Amended Petition.

Even if he didn't learn about Walker's arrest until later, Smith could have discovered that there were many Philadelphia drug cases getting dismissed due to Walker's involvement and cooperation. The media provided ample coverage of the July 29, 2014 federal indictment.[11] The allegations in Smith's supplemental motion show that the evidence he relies upon was discoverable well before September 15, 2017; thus, his supplemental motion is time-barred.

Additionally, this Court will not equitably toll the statute of limitations. Smith did not adduce evidence of active deception by the government, an extraordinary barrier to timely asserting his rights, or a mistake in forum. Thus, Smith does not provide the Court with a basis to equitably toll the statute of limitations and we decline to do so.

## IV. CONCLUSION

For the foregoing reasons, this Court denies and dismisses Defendant's Motions (ECF Nos. 2610 and 2847). This Court also declines to issue a certificate of appealability as there has been no substantial showing of a denial of a constitutional right.

An appropriate order follows.

---

[11] *See* http://philadelphia.cbslocal.com/2014/02/24/former-philly-policeofficer-expected-to-plead-guilty-to-corruption-charges/.; http://philadelphia.cbslocal.com/2014/09/26/five-dozen-moreconvictions-tied-to-corrupt-phila-cop-are-overturned/; http://philadelphia.cbslocal.com/2014/07/30/six-philadelphia-policeofficers-arrested-in-federal-corruption-probe/; http://6abc.com/news/6-philadelphia-narcotics-officers-arrested- /227671/; https://www.nbcphiladelphia.com/news/local/6-PhiladelphiaNarcotics-Officers-Arrested-269193381.html; http://time.com/3069249/philadelphia-narcotics-cops-charged-withstealing-drugs-money/.