### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : <br> : <br> v. : <br> :    CRIMINAL NO. 02-172-26 <br> CHRISTOPHER SMITH : <br> : | |

### MEMORANDUM

**Perez, J.**                                                                                                                             **November 25, 2025**

      Before the Court are two motions filed in anticipation of Defendant Christopher Smith's de novo resentencing following partial relief under 28 U.S.C. § 2255. The Government moves to stay the resentencing pending the conclusion of Defendant's active post-conviction proceedings in state court, asserting that the status of multiple state homicide convictions is integral to an accurate and complete application of 18 U.S.C. § 3553(a). Smith opposes a stay and, in a separate motion, seeks to compel additional discovery concerning certain investigative materials from the early 2000s that he contends are relevant to the credibility of witnesses and the integrity of investigations underlying those state convictions.

      The procedural history here is significant. Since his federal conviction in 2004, Smith has been prosecuted, convicted, and repeatedly retried in state court on several separate homicide charges, many of which are now the subject of ongoing collateral review. The Court must therefore decide whether to proceed with resentencing on a potentially shifting factual landscape and whether the discovery Defendant seeks is appropriate within the scope of his resentencing.

      For the reasons that follow, the Government's motion to stay will be granted, and Defendant's motion to compel will be denied.

I.  BACKGROUND

Christopher Smith's federal and state criminal matters have unfolded along parallel but distinct tracks for more than two decades. The federal case came first. In 2002, Smith and numerous co-defendants were indicted for participating in the Courtney Carter drug-trafficking organization, whose activities included the January 3, 2000 murder of Grayling Craig—a killing the jury attributed to Smith and that the Court later used to apply the Sentencing Guidelines' murder provision. ECF No. 3307 at 3. This federal prosecution resulted from a dedicated federal investigation into the Carter enterprise and preceded all of the later state homicide matters. In contrast, the state prosecutions—arising from separate shootings in 2002 and 2003—were the product of independent investigations led by Philadelphia homicide detectives. Although federal and local authorities occasionally cooperated through the "Mantua Task Force," the federal and state cases involved different victims, different conduct, and separate evidentiary records. ECF No. 3306 at 4–5; ECF No. 3307 at 12–13.

Although the federal indictment preceded any state charges, Smith was not taken into federal custody at that time. Instead, months later, he was arrested by Philadelphia police in April 2003 on unrelated state charges. That arrest placed Smith under the primary jurisdiction of the Commonwealth, and he therefore remained in state custody even after federal authorities executed the federal arrest warrant in May 2003. He has remained in uninterrupted state custody since that time. ECF No. 3306 at 2–3; ECF No. 3307 at 3.

Within this broader landscape, the parties' present discovery dispute involves statements made by Anthony Bennett, a federal inmate who happened to be housed at the Federal Detention Center during Smith's federal trial. Bennett had been arrested on unrelated federal charges in May

2

2003 and transferred to federal detention the following month, placing him in the same detention facility as Smith while Smith's federal trial was underway. In 2003, Bennett was interviewed by federal agents and Philadelphia homicide detectives about several homicides wholly unrelated to the Carter conspiracy. He played no role in the Craig murder or in any conduct charged in the federal indictment. His only involvement in Smith's federal case arose unexpectedly in January 2004, when the Government learned that Smith and several co-defendants had allegedly threatened a cooperating witness in the U.S. Marshals' lockup. ECF No. 3306 at 7. Because Bennett was present and purportedly witnessed the threats, he was interviewed and then testified briefly before Judge Dalzell—outside the presence of the jury—solely regarding the detention-center incident. *Id.*; ECF No. 3327 at 23–24. His statements concerning later state homicides played no role in the proof of the federal offenses. Following the jury's verdicts, Judge Dalzell sentenced Smith to life imprisonment plus thirty years, a sentence later reimposed after *United States v. Booker.* See ECF No. 2108.

After the federal sentencing, the Commonwealth pursued a separate series of prosecutions arising from homicides committed after the federal conspiracy period. Between 2004 and 2008, Smith was tried six times in the Philadelphia Court of Common Pleas—once for aggravated assault and five times for murder, several of them capital cases. These prosecutions relied heavily on cooperating witnesses tied to the later homicides, including Vincent Smithwick and Aquil Bond. Smith was convicted in each case; he ultimately received four life-without-parole sentences and, for a time, a death sentence that was later vacated in state post-conviction proceedings. ECF No. 3306 at 2–3.

The ensuing PCRA litigation has continued for more than a decade. In 2017, one of the murder convictions was vacated for ineffective assistance of counsel, and a retrial was later barred

on double-jeopardy grounds. *Id.* In 2020, Smith's death sentence was vacated and replaced with a term of life imprisonment. PCRA proceedings concerning several other homicide convictions remain pending. *Id.*; ECF No. 3310 at 2.

During much of this same period, Smith also pursued federal post-conviction relief under 28 U.S.C. § 2255. In 2023, after extensive litigation, the Court granted his § 2255 motion in part, vacated one conviction under 18 U.S.C. § 924(c), and ordered a de novo resentencing. See ECF No. 3209. Because Smith has remained in the primary custody of the Commonwealth of Pennsylvania since 2003, he has never been transferred to federal custody to begin serving his federal sentence.[1] He is currently serving multiple state life sentences, and his federal sentence—whether imposed now or after the conclusion of the ongoing PCRA proceedings—will not commence unless and until Pennsylvania relinquishes custody.

Since the resentencing order, the matter has proceeded toward a new federal sentencing hearing. That process has been complicated by the motions now before the Court. The Government seeks a stay of resentencing pending resolution of the state PCRA litigation, arguing that the status of Smith's state murder convictions is integral to the § 3553(a) analysis. Smith opposes a stay and separately moves to compel additional discovery concerning Bennett's historical statements and certain joint investigative materials from the early 2000s. He argues that these materials bear on the credibility of witnesses and the integrity of investigations underlying his state homicide

---

[1] A defendant's primary custodian is the sovereign that first arrested him, and that priority does not shift to another sovereign unless the first sovereign relinquishes it—for example, by granting bail, dismissing the charges, paroling the defendant, or completing the sentence. *See Ponzi v. Fessenden*, 258 U.S. 254, 260–62 (1922) (explaining that the sovereign who first obtains custody is entitled to retain the prisoner until its duty is fully performed). Accordingly, where a defendant is arrested by state authorities first and continues to serve unexpired state sentences, the federal sentence does not commence until the prisoner is released to federal authorities for execution of that sentence. *See Rios v. Wiley*, 201 F.3d 257, 272 (3d Cir. 2000), *abrogated in part on other grounds by statute*, *as recognized in*, *Holloman v. Warden Fairton FCI*, 635 F. App'x 12, 14 (3d Cir. 2015).

convictions and therefore should inform the federal resentencing. These motions are now before the Court.

## II. Government's Motion to Stay Resentencing

A district court's inherent authority "to control the disposition of the causes on its docket with economy of time and effort" implicitly carries with it "the power to stay proceedings[.]" *Landis v. N. Am. Co.,* 299 U.S. 248, 254–55 (1936). A federal court has inherent authority to stay its proceedings in the interest of judicial economy, accuracy, and fairness. A court may issue a stay if it simplifies the issues and promotes judicial economy, provided that the balance of harm to the parties is taken into consideration. *See Gentian v. Tristar Prods.*, No. 13-1758, 2021 WL 3561215, at *8 (D.N.J. Aug. 12, 2021).

Here, both parties' submissions and their arguments at oral argument confirm that the state homicide convictions occupy a central role in the upcoming resentencing. The Government has made clear that it intends to rely heavily on those convictions—and the underlying conduct—to support its sentencing request. The defense likewise acknowledges that the resentencing cannot be separated from those cases, arguing instead that unresolved questions about the integrity of the state investigations and trials should diminish the weight the Court places on the convictions. Both sides therefore agree that the status of the state matters directly affects what this Court must consider under 18 U.S.C. § 3553(a), including the "history and characteristics of the defendant."

The difficulty is that the state convictions remain in active PCRA litigation. Those proceedings involve substantive disputes concerning evidentiary issues, alleged investigative deficiencies, and potential impeachment material. Defense counsel argued that these matters undermine confidence in the state verdicts; the Government countered that those arguments can

5

only be evaluated—and any associated relief granted—by the state courts, not by this Court in the confines of a federal resentencing. ECF No. 3327 at 4; ECF No. 3310. Furthermore, several of the issues underlying the defense's discovery request fall, in the first instance, within the jurisdiction of the state court presiding over the PCRA proceedings, and that those matters should be addressed there rather than imported into this federal resentencing.

Sentencing now would therefore present an unavoidable risk to the accuracy and stability of the record on which the Court must rely. If the Court proceeds with resentencing and the state courts later vacate or modify any of the murder convictions, the Court may be asked to revisit the sentence. Alternatively, sentencing on the assumption that the convictions are sound—while a state court is simultaneously considering challenges to them—risks basing a federal sentence on facts that may soon materially change. Either scenario undermines the objectives of consistency, efficiency, and reliability that a stay is intended to protect. Moreover, the Court cannot reliably weigh the § 3553(a) factors when the factual and legal status of highly consequential components of Smith's criminal history is unsettled and subject to imminent change.

Furthermore, Smith has not shown that a limited stay would cause meaningful prejudice. Smith remains in the primary custody of the Commonwealth of Pennsylvania, serving multiple life sentences imposed in separate homicide prosecutions. Under long-settled principles of primary jurisdiction, he will not begin to serve his federal sentence until he completes or is released from those state sentences—a date that is, as a practical matter, decades away. *See Ponzi v. Fessenden*, 258 U.S. 254, 260–62 (1922). Accordingly, the delay required to permit the state courts to resolve the pending PCRA petitions does not prejudice Smith in any concrete way, does not postpone the commencement of his federal sentence, and does not impair his ability to gather or present mitigation evidence at the appropriate time. Given the length and finality of the state sentences

currently being served, there is no urgency that would weigh against a stay. The stay also avoids the risk identified by both parties at argument: that the Court will either sentence on an incomplete picture of the defendant's criminal history or be forced to undertake another resentencing if the factual landscape later shifts. For these reasons, the Court concludes that a temporary stay is warranted.

### III.     Defendant's Motion to Compel Discovery

A defendant seeking discovery in a post-conviction resentencing must demonstrate that the requested materials fall within one of the established disclosure obligations—Rule 16 of the Federal Rules of Criminal Procedure, the Jencks Act (18 U.S.C. § 3500), or *Brady v. Maryland,* 373 U.S. 83 (1963)—and that they are relevant to an issue the Court must resolve at resentencing. None of these authorities authorizes a broad search of investigative files that bear no connection to the federal offense conduct or to the factual findings necessary under 18 U.S.C. § 3553(a).

Rule 16 applies only to materials "material to preparing the defense" with respect to the *federal charges*. The Jencks Act requires disclosure only of the prior statements of a witness the Government actually calls to testify in *this* proceeding, and only when those statements relate to the subject matter of that testimony. *Brady* requires disclosure of evidence that is both favorable and material to the matter being adjudicated—not to collateral or speculative issues pending in other courts. The Third Circuit has repeatedly emphasized that mere speculation that useful information may exist is insufficient to trigger any of these obligations. *See United States v. Ramos,* 27 F.3d 65 (3d Cir. 1994); *United States v. Risha,* 445 F.3d 298 (3d Cir. 2006); *United States v. Dent*, 149 F.3d 180 (3d Cir. 1998).

Smith seeks extensive investigative materials concerning Anthony Bennett, the joint task force, and several state homicide witnesses—materials that do not relate to the federal drug-conspiracy prosecution, the Craig murder that drove the Guidelines calculation, or any sentencing factor the Court must decide. Bennett played no substantive role in the federal trial; he testified only briefly, outside the presence of the jury, on a collateral threat issue, and he will not be called at resentencing. Nothing in the requested materials concerns that narrow subject, and none bears on the federal conduct underlying Smith's conviction or sentence. Likewise, Smithwick, Bond, and the state homicide detectives were not witnesses in the federal case, and their investigative files are unrelated to any issue properly before the Court at resentencing.

The defense's reliance on *United States v. Rosa*, 891 F.2d 1074 (3d Cir. 1989), is misplaced. *Rosa* held that when the Government calls a witness at a sentencing hearing, the defendant is entitled under the Jencks Act to that witness's own prior statements so that he may effectively cross-examine the witness. The holding is narrow and turns on the presence of a testifying Government witness and a request for that witness's own statements. Neither circumstance exists here. The Government does not intend to call Bennett at the resentencing, and Smith does not seek the prior statements of any testifying witness. Instead, he seeks wide-ranging investigative files related to state homicide cases, none of which constitute Jencks material and none of which relate to the subject matter of any testimony at this proceeding. Speculative connections to a joint task force are insufficient to impose *Brady* or Jencks duties.

Finally, although defense counsel argues that the Bennett statement and joint task force materials would aid in impeaching witnesses and investigative practices in Smith's state homicide cases (and thus indirectly affect how this Court should view those convictions under § 3553(a), those arguments underscore rather than alleviate the irrelevance of the requested materials. Any

such challenges belong in the ongoing state PCRA proceedings, not in a federal resentencing. The federal proceeding is not a forum for collateral discovery related to state convictions, and the Court will not compel the Government to search decades-old files across multiple agencies for material that has no demonstrated relevance to the federal sentencing issues before it.

Bennett did not testify before the jury and had no role in establishing the offense conduct that resulted in Smith's federal convictions. His brief appearance during the 2004 proceedings concerned only alleged threats in the detention center and occurred outside the presence of the jury. ECF No. 3327 at 23-24. Bennett offered no evidence relevant to the federal charges and will contribute nothing to the Court's § 3553(a) assessment at resentencing. His earlier statements therefore could not have influenced the federal trial and have no present significance.

Moreover, the materials Smith seeks are irrelevant to the forthcoming resentencing and fall well outside the narrow categories of information discoverable under Rule 16, *Brady*, or the Jencks Act. They relate entirely to investigative disputes in Smith's state homicide cases—matters that are currently before the state courts in PCRA proceedings and that are properly resolved in that forum. The federal resentencing is not a vehicle for collateral discovery to support those state challenges, nor is it a means to reexamine investigative conduct in cases unrelated to the federal offense of conviction. As the requested materials have no demonstrated relevance to any issue the Court must decide at resentencing and fall outside all applicable discovery obligations, Smith has not met his burden to justify the broad and untethered discovery he seeks.

## IV.  CONCLUSION

For the reasons set forth above, the Court concludes that a stay of resentencing is warranted to ensure that the sentencing record rests on a stable and accurate foundation. The Government's

motion to stay will therefore be granted. The Court further concludes that the materials sought by Defendant fall outside the scope of Rule 16, *Brady*, and the Jencks Act, and bear no relevance to any issue that must be resolved at resentencing. Defendant's motion to compel will accordingly be denied.